## UNITED STATES v. IVEY.

### No. 757.

Circuit Court of Appeals, Tenth Circuit.

April 10, 1933.

Lawrence A. Lawlor, Atty., Veterans' Administration, of Washington, D. C. (Herbert K. Hyde, U. S. Atty., and Fred A. Wagoner, Asst. U. S. Atty., both of Oklahoma City, Okl., and Davis G. Arnold and Bayless L. Guffy, Attys., Veterans' Administration, both of Washington, D. C., on the brief), for the United States.

Harry F. Brown, of Guthrie, Okl., and Henry Hoel, of Stillwater, Okl., for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

Ivey brought this action against the United States on a policy of war risk insurance.

654

Trial by jury was duly waived and the action tried by the court. At the close of the evidence, counsel for the government moved for judgment in its favor on the ground that the proof wholly failed to establish that Ivey became totally and permanently disabled during the life of the policy. The court overruled such motion, and judgment was entered for Ivey.

The evidence, considered in the light most favorable to Ivey, established the following facts. He entered the Army on January 31, 1918, and was discharged June 6, 1919. While in the service he applied for and was granted a policy of war risk insurance in the amount of $10,000. Such insurance lapsed on August 1, 1919, unless prior to that date he had become totally and permanently disabled.

During the latter part of August, 1918, Ivey suffered a slight shrapnel wound in the leg. Shortly thereafter he inhaled a small amount of gas. These injuries were not reported. In October, 1918, while on the Champaigne Front, he sustained a shrapnel wound in the right wrist. After receiving first aid treatment he was removed to a hospital, where a part of his arm was amputated. Shortly thereafter he was returned to the United States and was placed in a hospital at Des Moines, Iowa, where another portion of bone was amputated. He remained in the hospital until his discharge. He then returned to Oklahoma and lived in a tent in his uncle's back yard for about two months. From there he moved to a farm, and purchased some cows and chickens. In 1921 he worked a farm on the shares, with the help of his brothers. He was able to work only about two hours at a time for the reason that any exertion caused a shortness of breath and a choking sensation. He first noticed this condition about one month after his discharge. Later he ran a small store for about six months. From then on he was engaged in farming on a small scale. Ivey was in poor health at the time of his discharge from the Army. Since then he has not been able to do heavy work, and even when he does light work it is necessary for him to rest frequently.

The medical expert on behalf of Ivey testified that in addition to his loss of an arm, Ivey was suffering from hyperthyroidism, contraction of the lungs, and an enlarged heart; that the contraction of the lungs was due to gas inhaled by Ivey, since there was no trace of tuberculosis; that the hyperthyroidism was probably caused from emotional disturbances brought on by Ivey's war experience, and that the enlarged heart was a result of the hyperthyroidism. It was also his opinion that at the time of the trial, Ivey was unable to follow continuously any substantially gainful occupation.

The test is whether Ivey, on August 1, 1919, had a disability which rendered it impossible for him to follow continuously any substantially gainful occupation, founded on conditions which indicated with reasonable certainty that such impairment would continue throughout his life. United States v. Fitzpatrick (C. C. A. 10) 62 F.(2d) 562; United States v. Peet (C. C. A. 10) 59 F.(2d) 728; Hirt v. United States (C. C. A. 10) 56 F.(2d) 80.

The burden was on Ivey to prove that the disability was permanent, that is, founded on conditions which render it reasonably certain that it would continue throughout his life. United States v. Rentfrow (C. C. A. 10) 60 F.(2d) 488; Roberts v. United States (C. C. A. 10) 57 F.(2d) 514; Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170. This burden was not met by leaving the matter in the realm of speculation.

It is evident that Ivey, because of the loss of an arm, was suffering from a partial, permanent disability. That alone however was not sufficient to warrant a recovery, since it is a well known fact that a person so disabled may enter many vocations and earn a substantial livelihood. The only evidence introduced by Ivey, which sheds any light on the nature of his physical condition in August, 1919, is the one doctor, who attributed the choking sensation and shortness of breath to contraction of the lungs, hyperthyroidism, and the enlarged heart; and the enlarged heart to hyperthyroidism. Therefore, we may assume that Ivey was suffering from hyperthyroidism and contraction of the lungs in August, 1919. It is a well known fact that hyperthyroidism is usually curable by surgery, X-ray, or rest. An insured who is suffering from a curable disease cannot through his own neglect and inaction permit the disease to progress to the incurable stage, and then assert a liability on his insurance contract on the ground that the disability was permanent at its inception, without some proof thereof.

Since Ivey did not introduce any substantial evidence showing a permanent disability on August 1, 1919, the judgment is reversed.